### The Gulf, Colorado & Santa Fe Railway Company v. John Butcher.

#### No. 3117.

**1. Argument of Counsel.**—Action against railway company for damages to wife of the plaintiff, caused by alleged negligence, etc., of the defendant. There being contention as to the extent of the injuries suffered by the wife, at request of the defendant the court made an order for her examination by a board of physicians. No objection appears to have been made to the order. Physicians made the examination and testified to result. In closing argument on the trial the attorney for plaintiff denounced the order of court and the examination as outrages upon the wife, etc. The trial court did not suppress nor control the attorney, nor attempt to do so. The verdict being for the plaintiff, and for large damages, *held*, the remarks of counsel assented to by the court's silence was ground for reversal.

**2. Quære.**—Can an order for examination of injured party be lawfully enforced against the consent of the party? This question is raised but not decided.

**3. Practice.**—Upon application for such order for examination of injured party, unless assented to, opposition should be made at the time to the order. After such order, and its execution without opposition, the party affected has no right to attack it in an appeal to the jury.

**4. Care for Safety of Passengers, etc. — Platforms. —** Injury resulted from a fall from platform at depot by a passenger. Suit for damages. *Held*, the defendant was not bound to have the platform absolutely safe, but only reasonably so under the circumstances; yet to accomplish that result it was bound to more than ordinary care and prudence.

Appeal from Dallas. Tried below before Hon. R. E. Burke.

John Butcher and wife filed this suit, September 16, 1884, in the District Court of Dallas County, to recover damages in the sum of $2500 for injuries received by the wife at Cleburne, Texas, in changing cars for the train to Dallas through falling from the platform at night. A trial was had upon this petition upon the —— day of December, 1886, and after a new trial granted, plaintiff filed an amended original petition on the 3d day of January, 1887, claiming damages in the amount of $10,200. July 12, 1889, judgment was rendered for the plaintiff for $4000 actual damages. Motion for new trial was made and overruled, and defendant has in due form prosecuted its appeal.

The chief grounds of negligence as charged in the petition are, the neglect and failure of appellant to have the platform of its depot properly lighted, and in not providing a watchman to assist its passengers

or show the approaches to the train, etc. In consequence of these omissions, it is alleged that the plaintiff's wife, who was one of defendant's passengers, stepped off the platform during the darkness of the night, and fell violently to the ground, and was thereby seriously injured, but without any fault upon her part, etc.

"Plaintiff and his wife were residents of Dallas, and were returning from a visit to their former home in England, May 20, 1884. They came from Galveston to Cleburne by the defendant's railway, arriving at Cleburne about 4 o'clock in the morning, on account of an accident which had delayed the regular passenger train. They got out of the car, along with other persons who had come from England with them, upon the platform on the right side, instead of going to the depot, which was on the left. After the train on which they had arrived had left, the train for Dallas 'pulled up' in the same place, alongside of the platform. Plaintiff's testimony tended to show, that some one cried 'all aboard,' and he told his wife to go and get on the train, while he followed with the hand baggage; that the cars in pulling up did not come up alongside of the platform, but the end of the baggage car was opposite the end of the platform; that there were no lights upon the platform, and Louisa Butcher, walking back to enter the train—supposing the platform was alongside the cars—fell off the end and sustained injuries." The testimony offered by the defendant tended strongly to disprove negligence upon its part and to show the want of due care upon the part of plaintiff's wife.

From the standpoint of the appellant the following is a fair summary of the evidence:

As to the injuries to plaintiff's wife, Day and Mrs. Haywood say that they were slight. Dr. Leake, who saw her at the depot, says they were slight. Her knee was bruised and cut slightly, and she claimed that her back and head were injured. Dr. Leake saw no sign of injury to the back. She claimed to have suffered greatly from pain in the head since the accident. On a former trial of the case she denied ever having had neuralgia or headache before she was hurt, and a statement from her evidence at that time to that effect was read on this. Dr. W. H. Sutton, her family physician, called to see her, and thought the injuries were slight. He said he had treated her frequently for neuralgia, before this injury and afterward; that he prescribed some light dressing for the knee, and did not remember ever having been called on afterward by her with respect to the injury to the knee; he treated her for dysentery not long after the injury.

The original petition upon which the case was tried in December, 1886, was read, wherein no damage was claimed for permanent injury. Plaintiff's wife testified on the trial, that her knee was permanently stiff, and that it pained her frequently. On the 14th of March, 1887, defendant filed a motion to have the plaintiff's wife examined by sur-

geons. The motion was granted, and Drs. Eagan, Sutton, and Mc-Laurin were appointed. The three surgeons made an examination of her jointly, and each testified that he could discover no permanent injury; there was nothing to indicate any permanent injury of the joint.

John Shea lived on the adjoining lot to plaintiff for two years; saw her constantly; was frequently in the house, and never saw Mrs. Butcher limp, and never heard her complain.

Cyrus Cox and his son John lived within fifty feet of Butcher; knew Mrs. Butcher well and saw her often. Saw her walking about out in the yard attending to the affairs of the house, and saw her picking up wood in the yard, and never saw her limping.

James Day, who was frequently with the family, never saw her limp.

Mrs. Haywood testified to the same thing substantially.

Plaintiff introduced a witness (John Morrison) who claimed to have seen plaintiff's wife limp. None of the physicians ever saw her limping.

There was other evidence adduced by the appellee which tended to show that the injuries were more serious and might become permanent.

Among other assignments of error questioning the sufficiency of the evidence to support the verdict, and claiming that the same is contrary to the law and the evidence, and that the amount of damages allowed by the jury is out of all proportion to the injuries inflicted, the appellant presents the following assignment, viz., that "the court erred in refusing to grant defendant's motion for a new trial, based on the ground that the verdict of the jury was excessive, and was the result of passion and prejudice, partially, if not wholly, created and excited by the language of the counsel for plaintiff in the closing argument to the jury, which was excepted to by the defendant and permitted by the court; the said counsel having been permitted by the court to denounce the conduct of defendant in having procured from the court an order for the examination of the person of Louisa Butcher by a committee of physicians as an outrage," etc.

One of the sharpest contests in the case was about the extent of the injury to the wife—whether slight or serious and permanent. The character of the ruling of the court and the language of counsel for the plaintiff, of which complaint is here made, appears from the bill of exceptions reserved by the appellant, viz.:

"Be it remembered, that on the trial of the above entitled cause, in the course of the closing argument for the plaintiff made by one of his counsel he denounced the conduct of the defendant in having procured an order from the District Court for the examination of Louisa Butcher by a committee of physicians, the said order being of record in the cause, and denounced the same as an outrage upon the law and upon her feelings. In the course of his remarks he said, among other things, that Judge Cooley, a great and eminent defender of the constitutional rights of the people as against power, had once said, that if a court

should order a committee of doctors to go into a man's house to examine his person he ought to 'shy them out of the window,' and teach them that men in this country still have some rights which railway corporations were bound to respect. He further said: 'This order for the examination of her person was an intrusion upon her privacy and modesty, and should never have been permitted or been availed of.' The court not having taken any notice of this language, the defendant's counsel called the attention of the court thereto, and announced that he would take a bill of exceptions to the same, because it was an improper criticism of an interlocutory order of the court previously made in the cause, and was outside of the issues presented to the jury, and therefore improper, as calculated to excite their passions and prejudices. Counsel then stated that he was replying to remarks of the counsel who had argued the case for the defendant. The court said that he had not paid particular attention, as he had been engaged in writing the charge, but remembered that defendant's counsel had said something upon the subject. To this counsel replied, that what he had said to the jury was substantially this: That he had not heard the other counsel for plaintiff fully in the opening argument while he was speaking upon that particular question, as he was called off to speak to some one, and only heard a part of what was said; that he understood said counsel to discuss the examination in the same light as his associate, and that he had heard him say that the examination of Mrs. Butcher was immodest and an outrage, and that she ought not to have been called upon to expose her person at the demand of defendant or anybody else. Counsel for defendant further said, that the law permitting examination was a reasonable one for the protection of litigants, and was intrusted to the sound discretion of the court, and the right could not be exercised without an order properly obtained. He then further proceeded to say, that it was not right to denounce proceedings done under the sanction of the court and the law as outrageous, because calculated to bring the law and the proceedings of the court into contempt, and that if the public mind should be excited to the point of believing that outrages were being perpetrated in the courts and by the courts, but one of two results must follow—the courts must be abolished or their incumbents changed, or mob law would prevail.

"The court made no further remark, and plaintiff's counsel proceeded to discuss the point again, saying, among other things not remembered with sufficient accuracy to quote, that this railway company had procured an order to enter the house of Mr. Butcher and examine the person of his wife; that it was a humble home of a poor man, but it was the home of the wife of his love, and the railway company should not have entered there, and it ought not to have been allowed to enter there and invade his privacy and lay its hands upon the person of this wife and mother. To each and all of this language ad-

dressed to the jury, and the action of the court in refusing to check the same and to charge the jury not to regard the same in any particular as relevant to the case, the defendant excepted, because the said language addressed to the jury under the apparent sanction of the court was calculated to excite their indignation and prejudice against the defendant on account of an act done in strict accordance with law and under an order of the court itself, and to take their minds away from the consideration of the question which alone was submitted to them—that is, whether or not the defendant was negligent in the premises, and whether or not the plaintiff was injured by reason thereof, and the extent of her injuries."

The trial judge in approving the bill makes the following explanation:

"My recollection, while not distinct as to what was said, is that defendant's counsel in his speech referred to the injury sustained by the plaintiff as being predicated upon an assumed injury, and that questionable swearing had been indulged in to sustain the theory of permanent injury to the plaintiff, and that taking the view that the alleged injury was simulated on the part of the plaintiff, the railway company had the right (and it exerted it) of having the plaintiff examined, under an order of the court, to ascertain the extent of her injuries, and the remarks complained of were in answer to this position.

"March 8, 1889.                    "R. E. Burke, District Judge."

The defendant appealed.

[This statement accompanied the opinion.]

*Leake, Shepard & Miller* and *J. W. Terry,* for appellant.—1. The order for the examination of Mrs. Butcher, who was then one of the plaintiffs, was a lawful exercise of the power of the court. Railway v. Johnson, 72 Texas, 95; Railway v. Underwood, 64 Texas, 463; Sibley v. Smith, 46 Ark., 275.

2. The language of the counsel addressed to the jury was not only calculated to excite intense prejudice against the defendant, but also to bring the proceedings of the court into contempt, and no verdict obtained through such means should stand. Railway v. Cooper, 70 Texas, 67; Railway v. Jones, 73 Texas, 232; Moss v. Sanger, 75 Texas, 321.

3. (1) It was the duty of the court to state clearly for the information of the jury the issues in the case, and also to define carefully the meaning of ordinary care with respect to the conduct of each party. (2) The first and third paragraphs of the charge of the court as set out in the foregoing statement, to the effect that it was the duty of the railway company to provide safe and suitable platforms and to keep them properly and suitably lighted, etc., and that a failure to do this would

be negligence for which the plaintiff should recover, are clearly erroneous, because they were upon the weight of the evidence, and took the question of fact as to the existence of negligence entirely from the jury. (3) The court should have given the instruction asked by defendant, or one similar thereto, defining the degree of care to be exercised by the carrier with respect to its passengers, and leaving the jury to ascertain from the evidence whether, under all the circumstances, the injury to the plaintiff was caused by a want of this care.   Railway v. Murphy, 46 Texas, 356; Railway v. Lee, 70 Texas, 496, 510; Markham v. Nav. Co., 73 Tex., 247, 251; Denham v. Lumber Co., 73 Texas, 78; Railway v. Greenlee, 70 Texas, 553, 561, 562; Railway v. Kuehn, 70 Texas, 582, 586; Railway v. Robinson, 73 Texas, 277.

*Crawford & Crawford*, for appellee, cited Page v. Page, 51 Mich., 91; Loyd v. Railway, 53 Mo., 515; Parker v. Enslow, 102 Ill., 279; Railway v. Best, 66 Texas, 117; Hamilton v. Railway, 64 Texas, 253; Stewart v. Railway, 53 Texas, 296; Peniston v. Railway, 44 Am. Rep., 444; Railway v. Grush, 67 Ill., 264; Railway v. Malon, 65 Texas, 117; Railway v. Greenlee, 70 Texas, 562.

MARR, JUDGE, *Section A.*—We think that the language and conduct of counsel for the plaintiff in his closing address to the jury, as disclosed by the bill of exceptions noted in the preceding statement of the case, was highly improper and well calculated to divert the minds of the jurors from the real issues in the case, and to influence their feelings to passion's heat and thus prejudice them against the defendant and prevent a deliberate exercise of rational judgment.   In such case, if there is a reasonable doubt, in view of the evidence, of the correctness of the verdict, and a strong probability that it would not have been so large in amount but for the use of improper and inflammatory language by counsel, it then becomes reasonably apparent that the conduct of counsel in this particular did materially influence the action of the jury, and by methods not consistent with a fair and impartial trial, and therefore the verdict ought to be set aside and a new trial granted. Railway v. Garcia, 62 Texas, 289, and cases cited; Railway v. Cooper, 70 Texas, 67; Railway v. Jones, 73 Texas, 232; Moss v. Sanger, 75 Texas, 321. What counsel did say in his address, as shown by bill of exceptions, though somewhat vehement, might not have been inappropriate if it had been addressed to the court originally in opposition to the granting of the defendant's application of the appointment of the committee of physicians to examine the plaintiff's wife.   There is nothing, however, in the record to show that any opposition was made by plaintiff or his counsel to the application being granted, nor was the evidence of the physicians who made the examination objected to on the ground that the order appointing them had been made without au-

thority of law.   It seems, therefore, that this order, as well as the examination of the wife, was made without opposition or protest from any one.   Certainly the parties with the acquiescence of the wife could have caused the examination to be made by mutual consent and with the sanction of the court.   But we are not, under such circumstances, required to decide whether the court was invested by law with the right to appoint the committee or compel the plaintiff's wife to submit to the examination.   The writer of this opinion very much doubts the existence of the power of compulsion in such cases, or to enforce the examination of the person of an individual without his or her consent, the effect of which would be, where the person to be examined is a female, to authorize the physicians to commit acts which otherwise would amount to an aggravated assault.   The constitutional guaranty may be inconsistent with the exercise of the power, and we do not understand that the Supreme Court has yet determined this question.   Bill of Rights, sec. 9;  Page v. Page, 51 Mich., 91;  Railway v. Johnson, 72 Texas, 95; Railway v. Underwood, 64 Texas, 463.

But in the present instance the proceedings in this particular must be regarded as in every respect regular as the matter is presented to us, and counsel in addressing the jury had no right to challenge their legality, but ought to have respected the previous orders of the court. If dissatisfied therewith, he might have excepted to the action when taken (if he did not consent to it), and thus have reserved the point for revision in a higher tribunal.   But to indirectly defy the authority of the court and denounce its order or decision as "an outrage" in its very presence, are not among the privileges of counsel as guaranteed by law.   The order of the court and the subsequent examination made thereunder not appearing to have been in anywise irregular, the line of argument pursued by counsel was not permissible to impeach the testimony of the examining physicians or to diminish the weight that might be attached to it by the jury.   In fact, the legality of the order or the examination under the circumstances was immaterial and not a subject for discussion before the jury.   In going beyond the issues of fact in the case by denouncing the order of the court and its procurement by the defendant as illegal and an outrage, the counsel not only trespassed upon the dignity of the court, but in effect accused the defendant of having unlawfully procured by means of the examination the desecration of plaintiff's home and fireside idols and the commission of a rude, if not indecent, assault upon a loving wife and mother. If this picture were real, still it could not increase the original injuries.   The fact that this oratorical ·display of counsel approaches the eloquent simply increases the probability of undue influence upon the jury, and consequent injury to the defendant.   If the cause of his client was fortified by the facts in evidence (and we do not hold that it was not), then he did not need this appeal to the jury to obtain a *just* ver-

dict from them.   We can not regard the explanation as given by the court as sufficient to remove the vice in the language as used by counsel.   The defendant's counsel certainly had the right to discuss the evidence adduced in relation to the extent of the injuries received by the wife, as well as the motives of those witnesses who were interested in the results of the suit, and it does not appear that in doing this they departed from the record or the line of legitimate argument upon the case as it stood before the jury.   What they had said upon the subject did not call for, much less justify, the retort of opposing counsel.

Ordinarily the error of counsel can not be magnified into an error of the court; but when the court refuses to restrain counsel after its protection has been duly invoked, then the error of counsel becomes an error of the court.   In view of the uncertainty arising under the evidence as to the real extent and character of the injuries sustained by the wife, and the probability that the improper remarks of counsel for the plaintiff influenced the action of the jury, we think that on account of the error of the court in not excluding this matter distinctly and positively from the consideration of the jury, as it should have done, the judgment should be reversed and a new trial granted.   The court did not restrain counsel at all, as will be seen from the bill of exceptions, but gave at least a tacit approval in the presence of the jury.

We will add that, in our opinion, the charge of the court was substantially correct, except that defendant was only bound to have its *platform*, etc., *reasonably* safe, and that there was no error in refusing to allow the second special instruction as requested by the defendant. This charge would have instructed the jury that the defendant was only bound to the exercise of ordinary care toward the plaintiff's wife, who was one of its passengers.   In regard to those things which the carrier is required to provide to secure the *safety* of the passenger, we understand that it is bound to use that high degree of care which a very prudent person would have used in his own business under the same circumstances.   Hutch. on Carr., secs. 506, 521.   The defendant was not bound to have its platform absolutely safe, but only reasonably so under the circumstances, yet in accomplishing this result it was bound to use more than ordinary care and precaution.   Railway v. Halloren, 53 Texas, 53; Railway v. Gorbett, 49 Texas, 580.   For the error indicated, we conclude that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*