CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY
ET AL. v. C. H. BARRETT.

Decided April 2, 1904.

**1.—Carrier of Passengers—Degree of Care as to Depot Platform.**

Requested charges as to the degree of care required in keeping a depot platform in safe condition for use of passengers held sufficiently covered by the general charge. It seems that the high degree of care generally required of railroad companies to prevent injuries to their passengers applies as well to keeping their platforms and usual approaches to depots and cars in reasonably safe condition as to other incidents and instrumentalities of transportation.

**2.—Personal Injury—Charge—Excluding Effect of a Former Injury.**

Requested charges, in an action for injury resulting in a broken collar bone, excluding from the jury's consideration the effect of a former breaking of that bone, held sufficiently covered by the main charge.

**3.—Carrier of Passengers—Depot Platform—Charge.**

Where the court properly charged with reference to negligence in leaving a skid, over which plaintiff stumbled and fell, lying at night on a depot platform, such charge was not rendered inapplicable by the fact that a witness for defendant testified "that the skids and trucks were kept against the wall of the depot," no witness testifying that they were so placed on the night of plaintiff's injury, or that the skid was placed where found by any person for whose act in so doing defendant was not liable.

**4.—Personal Injury—Verdict Not Excessive.**

A verdict for $2500 for injury resulting in a broken collar bone, with permanent injury to one shoulder, held not excessive.

Appeal from the District Court of Montague. Tried below before Hon. D. E. Barrett.

*N. H. Lassiter, Robt. Harrison* and *Jos. A. Graham,* for appellants.

*J. M. Chambers, Cham Jones,* and *J. H. Harper,* for appellee.

CONNER, CHIEF JUSTICE.—This suit was tried in the District Court of Mantague County, on the plaintiff's amended original petition, wherein it was alleged that plaintiff resided in Grayson County, Texas, and that on November 1, 1902, he was a passenger from Ryan, I. T., to Forth Worth, Texas, over the defendant's line of railway; that he boarded the train at Ryan before daylight, at which place there was no night agent to sell him a ticket, and that when the train reached Terral, he alighted at the instance of the conductor to get a ticket. That it was then dark, and that the platform over which he was required to pass in order to reach the ticket office was unlighted; that defendants had negligently left on the platform certain skids, used for the purpose of loading and unloading freight, and that he stumbled and fell over these skids and suffered thereby certain personal injuries.

The defendants specially denied the allegation that the depot building and platform at Terral were not properly lighted, and averred that the skids were placed against the wall of the depot building at a place, not frequented by passengers and at a place where they were not expected to be, and that if plaintiff stumbled over these skids it was the result of his own carelessness.

A verdict was returned in favor of the plaintiff and against the Chicago, Rock Island & Pacfic Railway Company and the Chicago, Rock Island & Texas Railway Company for the sum of $2500, from which verdict and the judgment thereon the two railroad companies have appealed to this court.

The testimony we think sufficiently supports the material allegations of appellee's petition, but error is assigned to the action of the court in refusing appellants' special charges numbers 4 and 5, to the effect that if the jury should find that the depot platform in question was at the time of appellee's injury "in a reasonably safe condition," or that appellants "exercised ordinary care to keep said platform in a reasononably safe condition for the purpose for which it was at the time maintained," they should return their verdict in appellants' favor. The court, after defining negligence as "the 'failure to exercise ordinary care," and ordinary care as "such care as a person of ordinary prudence would exercise under similar circumstances," charged the jury that appellants "were not held by the law as absolutely bound to keep their platform in a safe condition; they were only required to exercise ordinary care to keep it in a reasonably safe condition for the purposes for which it was used; and unless you find that the presence of said skid on said platform at the place it was when plaintiff stepped against it and fell, if he did so, was the result of a failure on the part of the defendants to exercise ordinary care to keep said platform in a reasonably safe condition for the purposes for which it was used, then you can not find that the defendants were guilty of negligence." "Unless you find from the evidence that the defendants were guilty of negligence by leaving said skid on the platform, and that such negligence was the cause of plaintiff's injury, if he was injured, you will find for defendant."

These charges, together with the usual charge on the burden of proof, we conclude sufficiently presented the theory of the requested charges, which indeed seem subject to the objection of embodying a rule of care not applicable in the case before us. That high degree of care generally required of railway companies to prevent injuries to their passengers would seem to apply, under the circumstances of this case, as well to keeping their platforms and usual approaches to depots and cars in reasonably safe condition as to other incidents and instrumentalities of transportation. Gulf C. & S. F. Ry. Co. v. Butcher, 83 Texas, 309; Fort Worth & D. C. Ry. Co. v. Davis, 4 Texas Civ. App., 351, 23 S. W. Rep., 737; Stewart v. Railway Co., 53 Texas, 289; San Antonio & A. P. Ry. Co. v. Turney, 33 Texas Civ. App., —, 78 S. W. Rep., 256 (writ of error refused); Missouri K. & T. Ry. Co. v. Mitchell, 34 Texas Civ. App., —. If this view of the law be correct, but which we need not now authoratively announce, it would follow that reversible error could not be predicated upon the action of the court in rejecting said special charges, even though the general charge

should be deemed insufficient in the particular under consideration, and notwithstanding the court's application of the less burdensome rule in its charge, of which also appellants are in no attitude to complain. The first and second assignments are accordingly overruled.

The principal immediate result of appellee's fall on the occasion here in question was a fracture of the left clavicle or collar bone, and on his cross-examination it was made to appear that the same bone had been broken some four or five months previously, as a result of which he had "laid off from work * * * four or five weeks." Appellant hence sought by special charges numbers 10 and 11 to have the jury instructed to the effect that (using the language of appellants' proposition under the assignments complaining of the rejection of these charges), that they should not "include in their verdict any compensation for plaintiff's previous injury, with which the railway company had nothing to do." The jury, however, by the court's general charge were limited to damages proximately resulting from negligence by appellants, and in addition thereto the court gave the following specific instruction, viz: "If you find for plaintiff, you can only compensate him for such injury as he sustained, if any, by falling while on said platform. For any other injury that he has sustained the defendants are in no wise responsible, and you can not allow him anything therefor." It is thus made to appear, we think, that the charges given substantially embraced special instructions numbers 10 and 11, and that hence the fourth and fifth assignments should be overruled.

Among other things the court charged the jury that: "It is a question of fact for you to determine whether the leaving of said skid on said platform at the place it was when plaintiff stumbled over it and fell, if he did so, was negligence or not;" and "If you believe from the evidence that defendants were guilty of negligence in leaving said skid on the platform at the place where it was when plaintiff fell, if he did fall, etc., you will find for the plaintiff." It is insisted that the instructions here quoted are erroneous in that they assume that the skids over which appellee fell were by appellant left where found on the platform some distance from the wall of the depot building, whereas one of the appellants' witnesses testified "that the skids and trucks were kept against the wall of the depot." The witness, however, was evidently undertaking to state merely where the skids were usually kept. He did not testify that they were so placed on the night of appellee's injury, and there is not a particle of evidence indicating that the skids were placed where found by some person for whose act in so doing appellants are not liable. Besides, by whomsoever placed where found, it is undisputed that said skids were "left there" until appellee's fall, and the court manifestly but submitted the issue of whether appellant's were guilty of negligence in permitting the skids to remain in the position in which they were when appellee fell, and this we think it properly did in the charges under consideration, regardless of who so placed the skids.

The only remaining assignments attack the verdict as excessive. This contention is predicated upon evidence to the effect that appellee suffered from a previous injury and from a severe attack of rheumatism not resulting from the fracture of his collar bone, which was classed by the medical witnesses as an injury ordinarily easily healed. Appellee however testified to the effect that the injury upon which he relies pained him very much, and has continued to pain him ever since its infliction; that he can not rest well at night or lie on his left side; that his left shoulder, which was exhibited to the jury, has shrunken in size; that he has never been able to lift anything with his left arm since the injury; that it pains him to press upon his left shoulder blade, and that in moving his left arm back and forth, which is accompanied with pain, "there is a creaking noise in the shoulder which can be heard several feet away;" that while he had been suffering from rheumatism and heart trouble during several months preceding the trial he had prior thereto been in good health, having recovered from his previous injury, weighing from 230 to 235 pounds, whereas he now weighs 195 to 200 pounds; that he was 26 years old when hurt, and his services worth from $40 to $50 per month; that he had been unable to work, paid medical charges, etc. One of the physicians who first examined appellee after the injury testified among other things, that "In primary fractures there is usually no difficulty in union of the bone; in this case the bone having been previously fractured at the same point would render union more tardy and less certain. If the bone fails to unite there will be considerable impaired usefulness of the shoulder and arm. On account of this being the second fracture at this point, union will be less liable to occur. The question of permanent injury all depends upon the union of the bone, which if complete, the injury will be but slight." Another physician testified that he had examined appellee previous to his attack of rheumatism, for which he had been treating appellee, and found a fracture of the collar bone and "evidence of injury to the left scapula or shoulder blade;" that he could yet feel where the fractures were; that the "deltoid muscle had been knocked down. It was very sensitive. The bone had never properly united. From the condition the bone is now, and was at the time I examined him, there is perhaps a permanent injury."

There is no contention that appellee has been guilty of negligence in relation to the treatment of his injury, and while there is other evidence tending to show that it was a simple fracture of the collar bone and that his present condition of inability to labor, and as to pain, is attributable perhaps to rheumatism, yet it was the province of the jury to settle the conflicting tendency of the evidence and to determine the amount of the damages. As a whole we conclude that the evidence in behalf of appellee supports the verdict and judgment in all particulars.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.