

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer Garrison, Jr., Director
Department of Public Safety
Austin, Texas

Dear Sir:

> Opinion No. O-1929
> Re: Is it permissible in cases
> where the defendant is charg-
> ed with driving a motor ve-
> hicle while under the influ-
> ence of intoxicating liquor to
> present evidence of the amount
> of alcohol in the system of
> the defendant as determined by
> breath tests, blood tests, and
> urine tests made when such
> charges were filed?

We are in receipt of your request for our opinion, from which we quote in part:

"Under the existing statutes, would it be permissible, in cases where the defendant is charged with driving under the influence of intoxicating liquors, to present evidence of the amount of alcohol in the system of the defendant as determined by breath tests, blood tests, and urine tests made when such charges were filed?"

Article 802 of the Penal Code of Texas, 1925, as amended, reads as follows:

"Any person who drives or operates an automobile or any other motor vehicle upon any street or alley or any other place within the limits of any incorporated city, town, or village, or upon any public road or highway in this state while such person is intoxicated, or in any degree under the influence of intoxicating liquor, shall upon conviction be confined in the penitentiary for not more than two (2) years, or be confined in the county

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Homer Garrison, Jr., Page 2

jail for not less than five (5) days nor more
than ninety (90) days and fined not less than
Fifty Dollars ($50) nor more than Five Hundred
Dollars ($500)."

The above article was first incorporated into
the statutes by the Acts of the Second Called Session of
the Thirty-eighth Legislature in 1923. (Acts 2nd C.S.
1923, p. 56). It has been twice amended, once in 1925 at
the First Called Session of the Forty-fourth Legislature,
(Acts 44th Leg. 1st C. S., p. 1654), and again by the Forty-
fifth Legislature at its Regular Session in 1937 (Acts 45th
Leg. p. 108). However, the amendments did little to change
the original definition of the crime, being principally de-
voted to the penalty. No effort has been made to prescribe
any different rule of evidence with reference to the speci-
fic offense. Of course, it is always incumbent on the
State to prove beyond a reasonable doubt that the defendant
was under the influence of intoxicating liquor at the time
of the alleged offense. Hittson v. State, 134 Tex. Cr. R.
131, 114 S. W. (2d) 881.

The question presented by you involves a consid-
eration of several factors. In the first place, while the
courts will go a long way in admitting expert testimony, de-
duced from a well recognized scientific principle or dis-
covery, the thing from which the deduction is made must be
sufficiently established to have gained general acceptance
in the particular field in which it belongs. See Frye v.
United States, 293 Fed. 1013 (District of Columbia, 1923;
systolic blood pressure deception test held inadmissible);
State v. Bohner, 210 Wis. 651, 246 N. W. 314, 86 A. L. R.
611 (1933, Wisconsin court rejected evidence obtained through
use of so-called "lie detector"); People v. Forte, 279 N. Y.
204, 18 N. E. (2d) 31, 119 A. L. R. 1098 (1938, same holding
by New York Court of Appeals).

We also wish to point out that the Texas Court of
Criminal Appeals has repeatedly held that non-expert witnesses
may testify as to intoxication of accused, in one case quoting
with approval an expression of a Pennsylvania court that
"drunkenness is of such common occurrance that its recogni-
tion requires no peculiar scientific knowledge." Inness v.
State, 106 Tex. Cr. R. 524, 293 S. W. 821, citing Common-
wealth v. Eyler, 217 Pa. 512, 66 A. 746, 10 Ann. Cas. 786,
11 L. R. A. (N. S.) 639. See also Underhill's Crim. Ev.
(3d Ed.) | 278; Spears v. State, 20 S. W. (2d) 1063; Riddle
v. State, 107 Tex. Cr. R. 571, 298 S. W. 580; Boyd v. State,

Honorable Homer Garrison, Jr., Page 3

106 Tex. Cr. R. 492, 292 S. W. 1112; Wallace v. State, 100 Tex. Cr. R. 499, 271 S. W. 911, and many others.

In prosecutions for driving a motor vehicle while intoxicated, or under the influence of intoxicating liquor, it is apparently not even necessary for the court in its charge to the jury to give any definition of the terms "intoxicated or in any degree under the influence of intoxicating liquors." Lockhart v. State, 108 Tex. Cr. R. 597, 1 S. W. (2d) 894; Stewart v. State, 108 Tex. Cr. R. 199, 299 S. W. 646.

We, therefore, express the opinion that since the courts have taken cognizance of the existence of non-technical, well recognized and readily available means of establishing intoxication, it would be necessary for the State to show the efficiency of the scientific methods used and the dependability of the results reached before the admission of the evidence.

However, if we concede that the tests you mention are of such scientific standing and well recognized as would render expert opinion as to the result thereof competent evidence, it would appear that if a person voluntarily permitted the taking of specimens of breath, blood or urine for such tests, the result thereof would be admissible in evidence against him. We quote from Herzog, Medical Jurisprudence, § 488, p. 355;

"Accused's right not to be compelled to be a witness against himself by a compulsory exhibition or examination of his body may be waived by his express or implied consent. Where positive consent is shown, the mere fact that accused was in custody when examined would clearly not prevent admission of evidence of such examination. . . . Where a defendant voluntarily submits to the examination, some courts hold that he thereby waives his right to object thereto. . . ."

A footnote refers to the Texas case of Cordes v. State, 54 Tex. Cr. R. 204, 112 S. W. 943. In that case it was held that on trial of a woman for infanticide, where she consented to a physical examination during her incarceration, after being advised by the physician that he would not examine her without her consent, the physician's testimony of her condition was admissible. We have no doubt of the ability of the defendant to waive any privilege incident to the use of such evidence as suggested in your inquiry.

Honorable Homer Garrison, Jr., Page 4

We next consider whether a person might be compelled to submit to the taking of specimens of breath, blood, or urine for the purpose of making scientific tests to determine whether such person was intoxicated or under the influence of intoxicating liquors. In the course of our investigation of this problem, we have been furnished an able opinion written in January of this year by the Honorable John E. Cassidy, Attorney General of the State of Illinois, in response to an inquiry by a prosecuting attorney of that state, whether a coroner or other officer would have the right to take a sample of the blood of the person causing a death, for the purpose of having the blood analyzed to determine whether or not such person was intoxicated at the time the death was caused. We acknowledge our appreciation to Mr. Cassidy for a copy of his opinion, from which we take the liberty to quote at length:

". . . It is essential to the protection of the public and the prevention of crime that police officers and law enforcing agencies engaged in the investigation and detection of crime be permitted to avail themselves of all reasonable means to accomplish the purposes for which they exist. On the other hand, every citizen is entitled to certain rights, liberties and immunities which by their nature and by constitutional guarantee transcend all others.

"Section 6, of Article II, Illinois Constitution, 1870, provides:

"'The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated; . . .'

"Section 10 provides:

"'No person shall be compelled to give evidence against himself, . . .'

"The restrictions on methods of police investigation are but complementary to the rights of every citizen as guaranteed under the above quoted provisions of the Bill of Rights. By the very nature of their offices, coroners, sheriffs, and police officials generally are charged with the duty not only of enforcing the law but also of obeying the same and honoring the constitutional guarantees applicable to all citizens,

Honorable Homer Garrison, Jr., Page 5.

the accused as well as the innocent."

Reference is made to a discussion of corresponding guarantees of the Federal Constitution by the United States Supreme Court in the case of Gouled v. U. S., 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, and Mr. Cassidy quotes from that case:

"The fourth amendment reads:

"'The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons and things to be seized.'

"The part of the fifth amendment here involved reads:

"'No person . . . shall be compelled in any criminal case to be a witness against himself.'

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in Boyd v. U. S. 116 U. S. 616, in Weeks v. U. S., 232 U. S. 385, and in Silverthorne Lumber Co. v. U. S., 251 U.S. 385) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is: That such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guarantee of them is as important and as imperative as are the guarantees of the other fundamental rights of the individual citizen, - the right to trial by jury, to the writ of habeas corpus and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment of the home, or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly overzealous executive officers."

Honorable Homer Garrison, Jr., Page 6

Our own Bill of Rights (Constitution of Texas, Art. I, Sections 9 and 10), contains almost identical language to the Illinois and United States Constitutions.

With respect to the security of persons, however, it is to be noted that the rights secured by the Federal Constitution and the Texas Constitution, supra, does not prohibit all searches and seizures but extends only to those considered unreasonable. Miers v. State, 136 Tex. Cr. R. 475, 126 S. W. (2d) 484; Moore v. Adams, (Civ. App.) 91 S. W. (2d) 447. Ordinarily a lawful arrest carries with it the right to search for weapons, any article which might aid or facilitate escape, establish identification or which appear to be fruits of the crime. 5 C. J. 434, | 74, 38 Tex. Jur. 73, | 50, Melton v. State, 110 Tex. Cr. R. 439, 10 S. W. (2d) 384; Hayes v. State, 115 Tex. Cr. R. 644, 28 S. W. (2d) 556; Agnello v. U. S., 269 U. S. 20, 46 Sup. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409.

We have found no case wherein our Court of Criminal Appeals has had for consideration whether a forced physical examination would violate the constitutional prohibition against unreasonable searches and seizures. But in civil cases the appellate courts have passed upon the question in several instances. Texas Employers Ins. Ass'n. v. Downing, (Civ. App., writ refused) 218 S. W. 112; A. & N. W. Ry. Co. v. Cluck, 97 Tex. 172, 77 S. W. 403, 64 L. R. A. 494, 104 Am. St. Rep. 863, 1 Ann. Cas. 261; Gulf C. & S. F. Ry. Co. v. Butcher, 83 Tex. 309, 18 S. W. 583; Mo. Pac. Railway Company v. Johnson, 72 Tex. 95, 10 S. W. 325; I. & G. N. Ry. Co. v. Underwood, 64 Tex. 463.

In the earlier cases the courts expressed doubt whether or not an order of the court to compel a plaintiff in a personal injury suit to submit to an examination by a physician violated the constitutional guaranty against unreasonable search and seizure, but in the case of Ry. Co. v. Cluck, supra, the Supreme Court in an opinion by Justice Brown held that neither the common law nor the statutes of this State authorized such an examination, and in the absence of specific legislative sanction, the examination was unwarranted. We quote from the opinion:

"Since the common law furnishes no precedent for such proceeding, we must look to our Constitution and statutes for authority in our courts to order the examination. The provisions of our Constitution and of our statutes with regard to the practice and jurisdiction of courts

Honorable Homer Garrison, Jr., Page 7

are antagonistic to the spirit and purpose of
such proceedings. To make sure of the immunity
of the person of citizens from improper inter-
ference by any authority, the convention which
framed our Constitution adopted as a part of
the Bill of Rights this section 9 of article I;

"'The people shall be secure in their per-
sons, houses, papers and possessions from all
unreasonable seizures or searches, and no war-
rant to search any place or to seize any person
or thing shall issue without describing them as
near as may be, nor without probable cause sup-
ported by oath or affirmation.' Whether, under
this guaranty of immunity from interference with
the person, the legislature might authorize the
physical examination of a party to a suit, is
not before us for determination, but we are of
the opinion that our Constitution secures every
citizen of this State against any seizure or
search of his person which is not plainly au-
thorized by some law of this State.

". . .

"The common law proceeding most analogous
to physical examination is the right of view,
by which a party sought to have his witnesses
examine the premises to qualify them to testify.
'There are but two such cases reported in the
English Reports. Newman v. Tate, 1 Arnold, 244,
and Turquand v. Strand Union, 8 Dowling, 201.'
The request was refused in both cases. Railway
Co. v. Botsford (141 U. S. 250). It is signifi-
cant that the legislature of this state after
adopting the common law of England, within a
short time after those cases were decided, re-
pealed the right of view by this article, 1451,
Revised Statutes. 'All vouchers, views, essoins,
and also trials by wager of battle and wager of
law, shall stand repealed.' Thus we see that
the legislature has not only failed to provide
for a physical examination of parties, but has
actually repealed from the common law in this
state the only proceedings that bore the slight-
est resemblance to it.

". . .

"It is the province of a court to try issues
formed by the pleadings of parties according to

the rules of procedure, to furnish all process
authorized by law to secure evidence, and to ad-
minister justice according to the evidence ad-
duced on the trial. The common law and our stat-
utes provide all of the means which courts are
authorized to use in the administration of jus-
tice between parties, and no court has authority
to originate and introduce a new process to en-
able parties to secure evidence in support of
their cases. A court with power to make subser-
vient to its order all persons and things that
will afford the most reliable evidence 'would
be an anomaly in constitutional republican gov-
ernment. It is better for the common good that
a court should be restrained within prescribed
limits, than that judges be invested with un-
limited and irresponsible powers over the per-
sons and property of the citizen.

"'In this state by our Constitution and
the common law the person of a citizen is so
sacred that an officer may not disregard the
right of personal freedom, even to satisfy an
execution by levying upon property which is up-
on the person of the defendant. . . .' "

While the confession of a defendant may be used
in evidence against him if made without compulsion or per-
suasion under statutory rules designated to safeguard his
rights (Arts. 726, 727, Code Cr. Proc. 1925), according to
Branch's Annotated Penal Code, p. 52, [ 59, the statute
is not limited to actual verbal or written acknowledge-
ment of guilt. We quote:

"The statute relating to confessions is
not confined to a technical confession, but
covers any act in the nature of a confession,
statement or circumstance done or made by de-
fendant while in confinement or custody, and
not having been properly warned, which may be
used by the state as a criminative fact against
him."

The statement of the text has been expressly ap-
proved by the Court of Criminal Appeals. Kennison v. State,
97 Tex. Cr. R. 154, 260 S. W. 174. In that case, in a for-
gery prosecution, the county attorney caused the defendant,
while under arrest, to be brought to his office and had him
write certain words, his own name and other writing without

Honorable Homer Garrison, Jr., Page 9

warning as to its use. It was held that admission of the
paper with the writing thereon, as a standard of comparison
was reversible error, being violative of the present Arti-
cles 726 and 727, Code Cr. Proc. 1925. See also Bratton
v. State, 102 Tex. Cr. R. 181, 277 S. W. 387, Click v. State,
119 Tex. Cr. R. 118, 44 S. W. (2d) 992.

The Texas constitutional provision that no per-
son accused of a criminal offense shall be compelled to
give incriminating evidence has been held to protect one
from being required to produce private papers which are
incriminating, Wilson v. State, 41 Tex. Crim. R. 115, 51
S. W. 916, Meredith v. State, 73 Tex. Cr. R. 147, 164 S.
W. 1019.

In a prosecution for assault with intent to rape
in which defendant claimed to have had frequent intercourse
with prosecutrix prior to the alleged assault, the trial
court refused to require prosecutrix to be examined by phy-
sicians appointed by the court to ascertain whether she had
led a virtuous life. The Court of Criminal Appeals declared
the ruling of the lower court to be a proper one. Rettig
v. State, 90 Tex. Cr. R. 142, 233 S. W. 839. Likewise, in
prosecutions for slander in using language imputing want
of chastity to the prosecutrix, where defendants urged a
medical examination to show whether the imputations were
true or false. Whitehead v. State, 39 Tex. Cr. R. 89, 45
S. W. 10; Bowers v. State, 45 Tex. Cr. R. 185, 75 S. W. 299.

In our search for precedents, it appears the
Texas courts have never been called upon to sanction a for-
cible invasion of the body of a person charged with a crime.
We have, therefore, looked to other jurisdictions.

In the case of Wragg v. Griffin, 185 Iowa 243,
170 N. W. 400, 2 A. L. R. 1327, petitioner who had been
committed to custody of the sheriff by order of the health
authorities, for the purpose of subjecting him to a physi-
cal examination and blood tests to determine whether or
not he was affected with a venereal disease sought relief
through a writ of habeas corpus.

The contention of respondent was that authority
for the proposed blood test existed in rules of the State
Board of Health. We quote from the opinion sustaining the
writ and releasing the petitioner:

"This petitioner may be a bad man, but we
have no right to assume such a fact for the pur-
pose of minimizing his claim to protection of

Honorable Homer Garrison, Jr., Page 10

the ordinary rights of person, which law and
the usages of civilized life regard as sacred
until lost or forfeited by due conviction of
crime. Even when charged with the gravest of
crimes, he cannot be compelled to give evidence
against himself, nor can the state compel him
to submit to a medical or surgical examination,
the result of which may tend to convict him
of a public offense. (State v. Height, 117 Iowa
650, 59 L. R. A. 437, 94 Am. St. Rep. 323, 91
N. W. 935); and, if there be any good reason
why the same objections are not available in
a proceeding which may subject him to ignomin-
ious restraint and public ostracism, it is, at
least a safe and salutary proposition to hold
that, before the court will uphold such an ex-
ercise of power, it must be authorized by a
clear and definite expression of the legisla-
tive will. This we do not have, and , in our
judgment, the restraint of the petitioner, not
as a diseased person whose detention in a sep-
arate house or hospital as the statute author-
izes, but solely as a suspect and for the avow-
ed purpose of forcing the exposure of his body
to visual examination, and compelling the ex-
traction of blood from his veins in search of
evidence of a loathsome disease, which may or
may not exist, is a deprivation of his liberty
without due process of law, and he is entitled
to be set free."

In People v. McCoy, 45 How. Prac. 216 (N. Y. Sup.
Ct.) a compulsory physical examination of a female prison-
er charged with the murder of her child, performed under
order of a coroner for the purpose of establishing that the
accused had been recently pregnant was held a violation of
the constitutional provision against self incrimination and
testimony as to the result of such an examination was denied
admission into evidence. The pertinent portion of the opin-
ion reads as follows:

"The forcible examination of the prisoner
by the physician for the purpose of obtaining
evidence that she had been pregnant, and had
been delivered of a child within two or three
weeks previous to the time of such examination,
was in violation of the spirit and meaning of
the Constitution, which declares that 'no per-
son shall be compelled in any criminal case to
be a witness against himself.' They might as
well have sworn the prisoner, and compelled her,

Honorable Homer Garrison, Jr., Page 11

> by threats, to testify that she had been preg-
> nant and been delivered of the child, as to have
> compelled her, by threats, to have allowed them
> to look into her person, with the aid of a spec-
> ulum, to ascertain whether she had been pregnant
> and been recently delivered of a child. . . ."

See also People v. Aikens, 25 Calif. App. 372, McManus v. Commonwealth, 264 Ky. 240, 94 S. W. (2d) 609, People v. Corder, 244 Mich. 274, 21 N. W. 309, People v. Curran, 286 Ill. 302, 121 N. E. 637.

We are not unmindful of the line of cases in this state and some other jurisdiction wherein it has been held not in violation of the constitutional privilege to compel a comparison of foot prints, take finger prints or to seize articles of clothing of a person under arrest for identifi- cation, but in such instances there is no forceful invasion of the body itself, for the purpose of producing evidentiary facts.

There is, of course, no disposition to quarrel with science. The twentieth century is essentially an era of scientific advancement. And while new scientific dis- coveries may at times furnish proof of error in a specific law, heretofore accepted, it is never the purpose or in- tention of science to refute the law. It has been the aim and the goal of science to benefit humanity, to add in- creased comforts to life and to cure human ills. But science has been inexorably opposed to the restriction of fundamental human life and liberty. On the contrary, its primary concern has been in behalf of a more expansive freedom in economic, social and political intercourse.

On the other hand, the law has welcomed science as a most valuable instrument to be used in the promulgation of justice. Not only has the law been liberal in its attitude toward science, but it has, by implication at least, cham- pioned the principle of freedom of research.

There should never be, nor should any necessity arise for, a parting of the ways between law and science. Science is predicated on certain immutable laws of nature. Law is based upon certain inalienable human rights. And although the two emanate respectively from these separate sources, they constitute in reality not a dualism but an original unit.

It must be remembered, however, that the basic problem of civilization has revolved around the struggle of man to obtain mastery over nature. And only in the de- gree that such mastery has been attained has civilization

Honorable Homer Garrison, Jr., Page 12

progressed. Science has aided in the struggle, but science has been the agent, not the instigator. And there is no more inalienable human right than that of sanctity of the person. Morally this axiom is older than either law or science. Legally it is the basic foundation of the Federal and State Constitutions under which this democracy operates.

It is our opinion that under our present constitutional and statutory provisions it is not permissible for the State to present evidence of the amount of alcohol in the system of a defendant charged with driving a motor vehicle while under the influence of intoxicating liquor as determined by breath tests, blood tests, and urine tests made by or at the instance of the officers where there is an invasion of the body or person to obtain the specimen, unless the said defendant waives his privilege.

Trusting that the above satisfactorily answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Benjamin Woodall*

Benjamin Woodall
Assistant

BW:LM

APPROVED APR 26, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE